UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA


KEARNS & ASSOCIATES COMPANY
d/b/a STEAM & PROCESS REPAIRS,     CIVIL ACTION
ET AL
                                   NUMBER 10-439-SCR
VERSUS

RICKY S. CARTER, ET AL


**RULING ON MOTION FOR SUMMARY JUDGMENT**

Before the court is the Plaintiffs' Motion for Summary Judgment filed by plaintiffs Kearns & Associates Company d/b/a Steam & Process Repairs ("Steam") and S & P Specialties Company, L.L.C., ("S & P") (collectively, "plaintiffs"). Record document number 80. The motion is opposed.[1]

**Background**

Plaintiffs moved for summary judgment on the claims alleged against defendants Ricky S. Carter and Ricky Carter & Associates, Inc. (collectively, "defendants") in Counts 1-5 of the Plaintiff's Original Complaint (hereafter, "Complaint").[2] Plaintiffs also

---

[1] Record document number 98. Plaintiffs also filed a reply memorandum. Record document number 107.

[2] In Count 6 of the Complaint the plaintiffs alleged a claim for damages and attorney's fees under the Louisiana Unfair Trade Practices and Consumer Protection Act. LSA-R.S. 51:1401, et seq. Plaintiffs maintained this claim in the pretrial order filed June 26, 2012, however, the plaintiffs' summary judgment motion did not address this claim. Therefore, this ruling does not cover the LUTPA claim. See, Record document number 1, Plaintiff's Original
(continued...)

moved for summary judgment on all counterclaims and crossclaims alleged by the defendants.³

Plaintiffs supported their motion with numerous exhibits.⁴ They have all been reviewed. It is unnecessary to list them again or summarize them in this ruling. Plaintiffs also filed a statement of undisputed material facts.⁵

Defendants filed a Memorandum in Opposition to Motion for Summary Judgment and exhibits, along with a Statement of Material Facts at Issue.⁶ Defendants' exhibits have all been reviewed. Again, it is unnecessary to list or summarize them in this ruling.⁷

**Analysis**

Plaintiffs' Motion for Summary Judgment is resolved as

---

²(...continued)
Complaint, Count 6, ¶¶ 46-50; record document number 77, Pretrial Order, p. 5.

³ See record document number 24, Answer, Counterclaims, and Crossclaims.

⁴ Record document number 86. Plaintiffs' Exhibits A through R are listed on pages four and five of the Plaintiffs' Memorandum in Support of Its Motion for Summary Judgment.

⁵ Record document number 81.

⁶ Record document number 99.

⁷ It is also unnecessary to restate the legal standard governing summary judgment and the principles of contract interpretation. This law has already been set forth in the Ruling on Motions for Partial Summary Judgment issued on November 2, 2011. Record document number 50. The applicable law as to other disputed claims which are the subject of this summary judgment motion is cited in the appropriate section below.

2

follows.

**There is a genuine dispute for trial as to the following claims and counterclaims:**

1. Plaintiffs moved for summary judgment in their favor as to the claims that Carter's actions breached his Employment Contract and constituted grounds for termination under the "material cause" section of the contract, breached the S & P Operating Agreement, and breached his fiduciary obligations[8] to S & P and Steam.[9] Plaintiffs also moved for summary judgment as to the defendants' related Ninth Counterclaim in which the defendants alleged that the plaintiffs wrongfully terminated the Employment Agreement without cause.[10]

The parties' arguments and the evidence have all been carefully reviewed. The facts material to these claims are in dispute, and where certain facts are undisputed a reasonable trier of fact, i.e. the jury in this case, could draw competing inferences. The resolution of factual disputes and the inferences to be drawn from undisputed facts require credibility

---

[8] The law applicable to the parties' fiduciary duties is set forth in their memoranda and paragraph 9.1 of the Operating Agreement. Record document number 86, pp. 12-13; record document number 98, pp. 23-25. See also, *Bryan D. Scofield, Inc. v. Susan A. Daigle, Ltd.,* 08-798(La.App. 3 Cir. 12/10/08), 999 So.2d 311, 314.

[9] These claims are alleged in Counts 2 through 4 of the plaintiffs' Complaint. Record document number 1, ¶¶ 30-45.

[10] Record document number 24, Answer, Counterclaims, and Crossclaims, p. 24, Ninth Counterclaim.

determinations, which cannot be done when ruling on a summary judgment motion. Therefore, viewing the evidence as a whole and drawing all reasonable inferences, as the court must do at this point, in the light most favorable to the defendants, summary judgment cannot be granted as to these claims.

2. In Count I of their Complaint, the plaintiffs alleged violations of the Lanham Act. 15 U.S.C. § 1051, et seq. Plaintiffs alleged that they have common law trademark rights in the Novalar mark because they have continuously used the mark in interstate commerce since February 2003. Plaintiffs alleged further that the defendants infringed on these rights by improperly registering and using the mark, and as a result caused them monetary damages. In addition to monetary damages, the plaintiffs also sought a declaration that S & P is the rightful owner of the Novalar mark.[11]

Defendants also asserted a counterclaim related to ownership of the Novalar mark. In the First Counterclaim defendants alleged that defendant Carter owns the Novalar trademark and formulas and is entitled to a judgment declaring his ownership.[12]

Thus, in this summary judgment motion the plaintiffs seek a judgment in their favor on the threshold issue in a trademark infringement case - ownership of a legally protectible mark.

---

[11] Record document number 1, ¶¶ 19-29.

[12] Record document number 24, ¶ 97.

4

Plaintiffs argued that the law and evidence establish that they are entitled to an order declaring S & P to be the owner of the Novalar mark. Since ownership of the mark is also the subject of the defendants' First Counterclaim, the plaintiffs' also seek dismissal of this counterclaim.

In this case, the following law governs the issue of the ownership of the Novalar mark.

Trademark infringement claims are governed by the Trademark Act of 1946 (Lanham Act), 15 U.S.C. §§ 1051 et seq. There are two elements to a successful infringement claim under the Lanham Act. The plaintiff must first establish ownership in a legally protectible mark, and second, show infringement by demonstrating a likelihood of confusion. *Amazing Spaces Inc. v. Metro Mini Storage*, 608 F.3d 225, 235-236 (5th Cir. 2010). Under the Lanham Act, proof of registration of a mark with the United States Patent and Trademark Office is prima facie evidence of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration. *Id.;* 15 U.S.C. § 1057(b). If a registrant has used its mark in connection with the specified services for five continuous years after the registration date and filed an appropriate affidavit, the mark is incontestable. 15 U.S.C. § 1065. *Exxon Corp. v. Oxxford Clothes, Inc.,* 109 F.3d 1070, 1078 (5th Cir. 1997); *American Rice, Inc. v. Producers Rice Mill, Inc.,*

5

518 F.3d 321, 330, n. 25 (5th Cir. 2008). Ownership of an incontestable mark constitutes conclusive evidence of the registrant's right to exclusive use of the mark in commerce for the services specified in the registration, subject only to the defenses enumerated in 15 U.S.C. § 1115(b).[13] *Id.*

---

[13] Defenses under § 1115(b) are as follows:
(1) That the registration or the incontestable right to use the mark was obtained fraudulently; or
(2) That the mark has been abandoned by the registrant; or
(3) That the registered mark is being used by or with the permission of the registrant or a person in privity with the registrant, so as to misrepresent the source of the goods or services on or in connection with which the mark is used; or
(4) That the use of the name, term, or device charged to be an infringement is a use, otherwise than as a mark, of the party's individual name in his own business, or of the individual name of anyone in privity with such party, or of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their geographic origin; or
(5) That the mark whose use by a party is charged as an infringement was adopted without knowledge of the registrant's prior use and has been continuously used by such party or those in privity with him from a date prior to (A) the date of constructive use of the mark established pursuant to section 1057(c) of this title, (B) the registration of the mark under this chapter if the application for registration is filed before the effective date of the Trademark Law Revision Act of 1988, or (c) publication of the registered mark under subsection (c) of section 1062 of this title: Provided, however, That this defense or defect shall apply only for the area in which such continuous prior use is proved; or
(6) That the mark whose use is charged as an infringement was registered and used prior to the registration under this chapter or publication under subsection (c) of section 1062 of this title of the registered mark of the registrant, and not abandoned: Provided, however, That this defense or defect shall apply only for the area in
(continued...)

6

Under 15 U.S.C. § 1055, "use" can be established through the related companies doctrine which requires the applicant to show that it controlled the first use of the mark. It states as follows:

> Where a registered mark or a mark sought to be registered is or may be used legitimately by related companies, such use shall inure to the benefit of the registrant or applicant for registration, and such use shall not affect the validity of such mark or of its registration, provided such mark is not used in such manner as to deceive the public. If first use of a mark by a person is controlled by the registrant or applicant for registration of the mark with respect to the nature and quality of the goods or services such first use shall inure to the benefit of the registrant or applicant, as the case may be.

A "related company" is defined under the Act as "any person whose use of a mark is controlled by the owner of the mark with respect to the nature and quality of the goods or services on or in connection with which the mark is used." 15 U.S.C. § 1127. The statute requires control over only the "use of a mark ... with respect to the nature and quality of the goods or services," which may include not only corporate control but also licensing agreements and other types of oversight. *Id.*, *Turner v. HMH Pub.*

---

<sup>13</sup>(...continued)
which the mark was used prior to such registration or such publication of the registrant's mark; or
(7) That the mark has been or is being used to violate the antitrust laws of the United States; or
(8) That the mark is functional; or
(9) That equitable principles, including laches, estoppel, and acquiescence, are applicable.

*Co.*, 380 F.2d 224, 229 (5th Cir. 1967).[14]

A careful review of the evidence in light of the law cited above demonstrates that the plaintiffs have not satisfied their summary judgment burden, and that there is a genuine dispute for trial on the issue of ownership of the Novalar mark. In denying summary judgment, it is sufficient to state that viewing the evidence as a whole in the light most favorable to the defendants and without making credibility determinations, a reasonable jury could infer that Carter established his "use" under the Lanham Act through the related companies doctrine.

3. Defendants' alleged in their Second and Fourth Counterclaims that Steam breached the Buy-Sell Agreement by failing to appoint an appraiser and purchase Carter's membership interest in S & P, and that Carter is entitled to one-third of the profits of S & P from December 31, 2009 until his membership interest is bought by Steam. Plaintiffs argued that summary judgment should be granted as to these counterclaims. According to the plaintiffs, an appraiser has now been appointed, and after his termination Carter took profit distributions he was not entitled to, therefore, they do not owe any amount to Carter for his membership interest.

---

[14] Section 1055 authorizes a trademark owner to license its mark, but only where the licensees of the service mark are related companies, i.e. where the owner of the service mark controls the licensees as to the nature and quality of the goods or services in connection with which the mark is used. *Exxon Corp.*, 109 F.3d at 1079, n. 12.

8

It is undisputed that the plaintiffs now have an appraiser and that the court has made a finding that the Buy-Sell Agreement requires Steam to purchase defendant Carter's membership interests in S & P at 50% of its Book Value. Nevertheless, summary judgment is not appropriate as to these counterclaims prior to trial on the merits of the plaintiff's principal claims that the defendants breached the employment and operating agreements. The facts and legal issues relevant to all of these claims are interrelated.

4. Defendants' Third Counterclaim is a claim that Carter is entitled to unpaid profit distributions in the amount of a one-half share of the profits of S & P for 2003 and the first quarter of 2004. Plaintiffs argued that this claim is prescribed, and in the alternative that Carter is only entitled to one-third of the profits. Plaintiffs, however, have failed to come forward with facts that demonstrate prescription under the statute they cite, LSA-R.S. 13:1328. The record also evidences a genuine dispute as to the parties' agreement on distribution of profits for this time period.

5. Although the defendants' Fifth, Sixth, and Eighth Counterclaims and Third Counterclaim and Crossclaim separately allege certain wrongful actions on the part of the plaintiffs, they all claim the actions were a breach of the Operating Agreement and the plaintiffs' fiduciary duties to Carter and S & P. Summary judgment is not appropriate as to these claims for the same reasons

9

that summary judgment cannot be granted as to the plaintiffs' claims for breach of contract and fiduciary duty.

**There is no genuine dispute for trial as to the following Counterclaims and Counterclaims and Crossclaims:**

1. Summary judgment is appropriate at to the defendants' Seventh Counterclaim. Defendants' Seventh Counterclaim alleged that Carter is entitled to damages in *quantum meruit* or unjust enrichment as a result of manual labor he was required to do for S & P, which was beyond the scope of his Employment Agreement. Defendants did not oppose the plaintiffs' summary judgment arguments on this counterclaim,[15] and stated in their response that they did not intend to pursue this claim.[16] Therefore, summary judgment will be granted as to the defendants' Seventh Counterclaim.

2. Summary judgment is appropriate at to the defendants' First and Second Counterclaim and Crossclaims for Tortious Interference with Business Relations. Defendants' First and Second Counterclaim and Crossclaims allege state law claims for tortious interference with a business relationship. Defendants claimed that Steam intentionally interfered with Carter and S & P's business

---

[15] Record document number 86, pp. 33-42.

[16] Record document number 98, p. 47.

relationships with Ergon and Steam's salesman.[17]  Plaintiffs argued that the defendants have no evidence to support essential elements of this alleged intentional tort, i.e. no evidence of malice and damages.[18]  Defendants did not address these counterclaims and crossclaims in their opposition memorandum. Defendants' failure to come forward with any evidence demonstrating that there is a genuine dispute for trial on their alleged claims for tortious interference with business relations, requires that summary judgment be granted as to these claims.

## Conclusion

Accordingly, the Motion for Summary Judgment filed by plaintiffs Kearns & Associates Company d/b/a Steam & Process Repairs ("Steam"), S & P Specialties Company, L.L.C., ("S & P") as to the defendants' Seventh Counterclaim and the defendants' First and Second Counterclaim and Crossclaims for Tortious Interference with Business Relations, is granted.  The remaining aspects of the

---

[17] Record document number 24, ¶¶ 108 and 109.  These paragraphs also included allegations that the actions also constituted breach of Steam's fiduciary duty.  However, the defendants discussed facts related to Ergon and Steam's salesman in connection with their Third Counterclaim and Crossclaim (paragraph 110), which specifically alleges Steam's breach of fiduciary duties.

[18] In a claim for tortious interference with business relations, the law only protects against malicious and wanton interference. To establish this claim a party must prove actual malice. *Junior Money Bags, Ltd. v. Segal*, 970 F.2d 1, 10 (5th Cir. 1992); *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 602 (5th Cir. 1981); *JCD Marketing v. Bass Hotels and Resorts*, 2001-1096 (La.App. 4 Cir. 3/6/02), 812 So.2d 834, 841.

11

plaintiffs' motion are denied.

Baton Rouge, Louisiana, August 1, 2012.

_____
STEPHEN C. RIEDLINGER
UNITED STATES MAGISTRATE JUDGE